UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CLIFFORD PATTERSON | ) | Case No. 13cv1536-MMA (DHB) |
| Petitioner, | ) | **REPORT AND** |
| | ) | **RECOMMENDATION OF** |
| v. | ) | **UNITED STATES MAGISTRATE** |
| | ) | **JUDGE REGARDING PETITION** |
| JEFFREY BEARD, Secretary of the | ) | **FOR WRIT OF HABEAS** |
| California Department of Corrections | ) | **CORPUS** |
| and Rehabilitation, | ) | |
| Respondent. | ) | |
| | ) | |

On September 23, 2013, Petitioner Clifford Patterson ("Petitioner"), a state prisoner proceeding *pro se*, filed a First Amended Petition for Writ of Habeas Corpus. (ECF No. 5.[1]) Petitioner seeks relief from his May 25, 2010 conviction and his 16 year sentence for assault with a deadly weapon. Petitioner alleges five grounds for relief: (1) breach of a plea agreement relating to a prior conviction; (2) ineffective assistance of counsel at sentencing on a prior conviction; (3) ineffective assistance of counsel at trial; (4) prosecutorial misconduct; and (5) judicial errors. Respondent filed an Answer opposing any habeas relief. (ECF No. 12.) Petitioner has not filed a Traverse, and the time for doing so has now expired. The Court has reviewed the parties' pleadings, the record, and controlling law, and for the

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing (ECF) system.

reasons discussed below, hereby **RECOMMENDS** that the Petition be **DENIED**.

## I.   BACKGROUND

### A.   Factual Background

The following facts are taken from the unpublished California Court of Appeal Opinion in *People v. Patterson*, Case No. D057481 (Cal. Ct. App. Dec. 21, 2011). (Lodgment No. 6.) The Court presumes these factual determinations are correct pursuant to 28 U.S.C.A. §2254(e)(1). *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (finding factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary).

John Shue and Misti Ramsay had been family friends since 1991. Shue began helping Ramsay with various issues after Ramsay separated from her husband. Shue met Patterson through Ramsay in 2009. Patterson moved in with Ramsay to help her pay her rent. Patterson was interested in having a romantic relationship with Ramsay, and he appeared to be jealous of Shue's friendship with Ramsay.

On October 22, 2009, Patterson called Shue. Shue's nine-year-old nephew answered the telephone. Patterson said to the boy, "'Tell Misti to get her ass home.'" Ramsay was not at Shue's residence when Patterson called. Shue had agreed to give Ramsay a ride home that evening from a class that she was taking. When Shue picked up Ramsay, he asked her whether she knew anything about Patterson's telephone call. Ramsay was not aware at that time that Patterson had left angry messages on her voicemail earlier that day.

Shue and Ramsay arrived at Ramsay's apartment at approximately 9:00 p.m. that evening. When they walked in, Patterson began yelling and, in an aggressive tone, told Shue to "'get the fuck out.'" Shue responded that he was not leaving, and indicated that he wanted to talk with Patterson about the way Patterson had spoken to his nephew on the telephone. Patterson approached Shue with his fists in the air, as if he was preparing to fight.

Shue told Patterson that he did not want to fight and said that he did not want either of them to go to jail. Shue just wanted to talk. Patterson responded by pushing Shue in the shoulder. Shue repeated that he did not want to fight, and walked out of the apartment, heading down the stairs to the parking lot.

Patterson followed Shue down the stairs. When Shue reached the landing, Patterson went back up the stairs. Shue followed Patterson. When Patterson reached the top of the stairs, he pulled down his pants, flashed his genitals at Shue, and went into the apartment.

Shue entered the apartment. At this point, Patterson was spreading cream cheese on a bagel with a knife. When Patterson saw Shue, he approached Shue with the knife in his hand. As Patterson approached Shue, Ramsay called 911. Patterson held the knife in his left hand, and walked toward Shue as if he was going to stab Shue in the stomach. When Patterson came within inches of Shue, Shue opened the screen door to the apartment and left.

Patterson chased Shue down the stairs until Shue got to the bottom of the staircase.  Patterson then returned to the apartment.  Before entering the apartment, Patterson turned and said to Shue, "'John, you're a dead man.'"  Shue felt threatened by Patterson's statement.  Shue began to yell back at Patterson, but Patterson closed the door and locked the deadbolt.

When Patterson entered the apartment, he approached Ramsay and lunged at her with the knife, more than once.  Ramsay screamed.  Ramsay believed that Patterson would have stabbed her if she had not moved out of the way.  Ramsay ran out of the apartment.

Shue heard a woman's scream coming from the apartment.  Shue ran back up the stairs and looked through the window of the apartment.  He saw Patterson standing close to Ramsay.  Shue then ran down to his car to retrieve a baseball bat.  While Shue was going to his car, Ramsay ran out of the apartment yelling, "'Cliff is chasing me with the knife.'"  Shue grabbed the bat and ran toward Ramsay.  Shue saw Patterson following Ramsay, holding a bagel.  Shue told Ramsay to get out of the way, and started to run toward Patterson.  Because the only thing that Patterson had in his hands at this time was a bagel, Shue decided not to hit Patterson with the bat.  However, Patterson began to chase Shue.  Shue could hear sirens some distance away.

When police arrived, they ordered Patterson to get down on the ground.  Patterson initially refused to comply.  He also refused to take his hands out of his pockets when ordered to do so.  Instead, he said, "'shoot me.'"  The police eventually were able to apprehend Patterson and arrest him.  A knife was recovered from inside the apartment.

(Lodgment No. 6 at 2-4.)

## B.    Procedural Background

On February 18, 2010, Petitioner was charged in an amended information with two counts of assault with a deadly weapon by means of force likely to produce great bodily injury in violation of Cal. Penal Code § 245(a)(1), and one count of making a criminal threat in violation of Cal. Penal Code § 422.  (Lodgment No. 1 at 6-7.)  The amended information also alleged Petitioner had various prior convictions, including two serious felony priors, a prison prior, and two strike priors.  (*Id.* at 8-9.)  On February 24, 2010, a jury found Petitioner guilty of assault with a deadly weapon on count one, guilty of the lesser included offense of simple assault on count two, and not guilty of making a criminal threat as charged in count three.  (*Id.* at 117, 119-123.)  Thereafter, Petitioner admitted the prior convictions.  (*Id.* at 118.)  On May 25, 2010, Petitioner was sentenced to state prison for a term of 16 years.  (*Id.* at 127.)

Petitioner appealed his conviction.  (Lodgment No. 1 at 99; Lodgment No. 4.)  His

direct appeal raised three issues, which are claims three, four and five presented here: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct; and (3) that judicial errors deprived Petitioner of a fair trial. (Lodgment No. 4.)  On December 20, 2011, the Court of Appeal affirmed the conviction. (Lodgment No. 6.)  The Court of Appeal rejected Petitioner's claims in part on the merits, and in part for procedural reasons. (*Id.*)  Petitioner did not file a Petition for Review in the California Supreme Court.

On October 15, 2012, Petitioner filed a habeas petition in the San Diego Superior Court. (Lodgment No. 7.)  He raised a single claim - breach of a 1999 plea agreement.  This claim correlates to ground one in the instant Petition. (*Id.*)  The Superior Court denied the petition on December 14, 2012. (Lodgment No. 8.)

On January 25, 2013, Petitioner filed a habeas petition in the California Court of Appeal, raising two claims that correlate to grounds one and two in the instant Petition. (Lodgment No. 9.)   Petitioner claimed (1) breach of a 1999 plea agreement and (2) ineffective assistance of counsel regarding his lawyer's performance in 1999. (*Id.*)  On February 22, 2013, the Court of Appeal denied the petition. (Lodgment No. 10.)

Petitioner then filed a habeas petition in the California Supreme Court. (Lodgment No. 11.)  Petitioner specifically discussed three claims in his brief: (1) breach of a 1999 plea agreement, (2) ineffective assistance of counsel in 1999, and (3) ineffective assistance of trial counsel during his 2010 case. (*Id.*)  These claims correlate to grounds one, two, and three here.  Petitioner also attached as an exhibit, a copy of the brief he filed on direct appeal, which contained two additional claims: (1) prosecutorial misconduct and (2) judicial errors. (*Id.*)  The additional claims parallel grounds four and five here.  The California Supreme Court summarily denied habeas relief on May 15, 2013. (Lodgment No. 12.)

On July 1, 2013, Petitioner timely filed his federal Petition for Writ of Habeas Corpus. (ECF No. 1.)  July 9, 2013, the Court dismissed the Petition without prejudice and with leave to amend because Petitioner failed to satisfy the filing fee and to name a proper respondent. (ECF No. 2.)  On September 23, 2013, Petitioner filed his First Amended Petition for Writ of Habeas Corpus. (ECF No. 5.)  On November 26, 2013, Respondent filed an Answer.

(ECF No. 12.)  Petitioner has not filed a Traverse.

## II.   DISCUSSION

### A.   Legal Standard

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls review of this Petition.  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d)(1) and (2); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in United States Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A federal court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case.  *Id.*  Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

"Clearly established federal law" means the law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).  Circuit precedent may be pertinent to the extent it illuminates the meaning and application of Supreme Court precedent, but "[o]nly Supreme Court precedents are binding on state courts under AEDPA." *Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005).  "[W]hen a Supreme Court decision does not 'squarely address[] the issue . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue," and the federal court "must defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009).  S*ee also Carey v. Musladin*, 549 U.S. 70, 77 (2006) (the lack of holdings from the Supreme Court on the issue presented precludes relief under 28 U.S.C. § 2254(d)(1)).

In applying 28 U.S.C. § 2254(d)(2), federal habeas courts must defer to reasonable factual determinations made by the state courts, to which a statutory presumption of correctness attaches.  28 U.S.C. § 2254(e)(1); *see Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007).  To determine whether habeas relief is available under § 2254(d), the Court "looks through" to the last reasoned state court decision as the basis for its analysis.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-8-3 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Andrade*, 538 U.S. at 75-76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

## B.    Evidentiary Hearing

As an initial matter, the Court finds that Petitioner has not made any argument that further factual development is necessary, such that an evidentiary hearing would be warranted.  *See* 28 U.S.C. § 2254(e)(2) (listing exceptions where evidentiary hearing may be appropriate).  Therefore, the Court finds an evidentiary hearing is not necessary because the Petition can be resolved by reference to the record. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

### C.      Claim One: Breach of the 1999 Plea Agreement

Petitioner's first claim is that prosecutors breached the plea agreement from a prior case in 1999. (ECF No. 5 at 6.) Petitioner claims that under the 1999 plea agreement, the prosecution agreed that Petitioner's 1999 conviction for making a criminal threat would not be used as a future strike or as an enhancement in any future case. Petitioner argues the plea agreement was breached when his 1999 conviction was used to enhance the sentence for his current commitment offense. Respondent contends the state courts reasonably and properly rejected this claim because there was, in fact, no agreement precluding the future use of the 1999 conviction as an enhancement. (ECF No. 12.) For the reasons set forth below, the Court agrees with Respondent.

Petitioner presented this claim to the California Supreme Court, and it was denied without comment. (Lodgment Nos. 11 and 12.) The Court will therefore look through the silent denial to the last reasoned decision, which is the Court of Appeal's February 22, 2013 opinion denying Petitioner's state habeas corpus petition. *Ylst*, 501 U.S. at 804. The Court of Appeal denied Petitioner's claim as follows:

> The Court did not use the conviction in SCD 147686 [the 1999 conviction] as a strike in imposing the 2010 sentence, and there is nothing on the 1999 plea form that prevents the conviction's use as a five-year enhancement. To the contrary, as Patterson acknowledged on the form in 1999, "[m]y attorney has explained to me that other possible consequences of this plea may be . . . priorable (increased punishment for future offenses)." Patterson has failed to state a prima facie case upon which relief can be granted. (*In re Clark* (1993) 5 Cal.4th 750, 769, n.9.).

(Lodgment No. 10.)

The San Diego Superior Court also considered and rejected this claim on habeas review. (Lodgment No. 8.) The Superior Court noted that the 1999 conviction was not used as a strike to enhance the 2010 sentence, but rather a different conviction – one from 2002 – was the only strike used. (Lodgment No. 8 at 3; Lodgment No. 1 at 127.) The Court acknowledged that the 1999 conviction was used to enhance the 2010 sentence as a prison prior. However, the Court found the 1999 plea agreement indicated that one of the possible consequences of the plea was that the 1999 conviction was "priorable" and may lead to "increased punishment for future offenses." (Lodgment No. 8 at 4.) Therefore, the Superior

1   Court concluded Petitioner's claim was meritless.  (*Id.*)

2       A criminal defendant has a due process right to enforce the terms of his plea

3   agreement.  *Santobello v. New York*, 404 U.S. 257, 261-262 (1971).  "[W]hen a plea rests

4   in any significant degree on a promise or agreement of the prosecutor, so that it can be said

5   to be part of the inducement or consideration, such promise must be fulfilled."  *Id.* at 262.

6   However, the construction of a state plea agreement and the obligations flowing therefrom

7   are, "within broad bounds of reasonableness, matters of state law." *Ricketts v. Adamson*, 483

8   U.S. 1, 5 n.3 (1987).  Furthermore, a state court's factual findings are given great deference,

9   and the Petitioner "has the burden of rebutting the presumption of correctness by clear and

10  convincing evidence."  28 U.S.C.A. 2254(e)(1).

11      Here, as the state courts noted, the record belies Petitioner's claim.  In fact, the record

12  supports the opposite conclusion – that Petitioner's 1999 plea agreement was not breached.

13  California law distinguishes the use of a prior conviction as a "strike" under California Penal

14  Code § 667(b)-(i), from the use of the same conviction as a serious felony under California

15  Penal Code § 667(a), and each classification has different implications at sentencing.  *See*

16  Cal. Penal Code §667.  The plea agreement petitioner signed in 1999  indicates his

17  conviction would not be used as a future "strike," but that it would be "priorable" and could

18  enhance his punishment for future offenses.  (*See* Lodgment No. 11.)

19      On December 3, 1999, Petitioner signed the plea agreement indicating he agreed to

20  plead guilty to one count of making a criminal threat in violation of Cal. Penal Code § 422.

21  (Lodgment No. 11).  In paragraph 7c of the agreement, the box next to the statement "I

22  understand that my conviction in this case will be a serious/violent felony ("strike") resulting

23  in mandatory denial of probation and substantially increased penalties in any future felony

24  case" was checked with and "X."  (*Id.*)  The "X" signified that the provision was not

25  applicable to the 1999 plea agreement.  In contrast, the box next to paragraph 7f of the

26  agreement contained Petitioner's initials, indicating the provision was applicable, and that

27  Petitioner agreed to it.  Paragraph 7f states: "[m]y attorney has explained to me that other

28  possible consequences of this plea may be . . . (7) Priorable (increased punishment for future

offenses)" and "(8) Prison prior." (*Id.*)  By initialing the box next to paragraph 7f, Petitioner acknowledged the possibility that the 1999 conviction could be as a future enhancement. Finally, Petitioner's initials and signature appears on the final page of the agreement after paragraph 13 which states: "I declare under penalty of perjury that I have read, understood, and initialed each item above . . . and everything on the form . . . is true and correct." (*Id.*)

In compliance with the 1999 plea agreement, the prosecution moved to strike the 1999 "strike" during the sentencing hearing on the 2010 conviction.  (Lodgment No. 1 at 127.) The trial court granted the motion, and did not use the 1999 conviction as a "strike" under Cal. Penal Code § 667(b)-(i).  (*Id.*)  However, the trial court did use the 1999 conviction to impose a 5 year enhancement under Cal. Penal Code § 667(a), which the 1999 plea agreement contemplated.  (*Id.*)

Based on this record, the state courts concluded that there was nothing in the 1999 plea agreement that precluded the state from using the 1999 conviction as an enhancement under § 667(a).  Petitioner has not carried his burden under § 2254(e)(1) to rebut the state courts' conclusions, and this Court must therefore accept the state appellate court's factual findings. Given those findings, the state court correctly found that there was no breach of the plea agreement.  Therefore, the state court's denial of Petitioner's claim in Ground One was not contrary to nor an unreasonable application of clearly established Supreme Court law.

Accordingly, the Court RECOMMENDS that Petitioner's claim in Ground One be DENIED.

### D.    Claim Two: Ineffective Assistance of Counsel at Sentencing in 1999

In Ground Two, Petitioner claims that his 1999 defense counsel rendered ineffective assistance by failing to fully inform him of the consequences of the 1999 plea agreement. (ECF No. 5 at 7.)  Petitioner argues he would not have signed the agreement had his counsel informed him that the conviction could be used to enhance a later sentence.  Respondent counters that this claim does not present a cognizable federal claim, and alternatively that the state courts reasonably rejected this claim.  The Court agrees with Respondent.

Petitioner presented this claim to the California Supreme Court, and it was denied

without comment.  (Lodgment Nos. 11 and 12.)  Therefore, the Court looks through the silent denial to the Court of Appeal's February 22, 2013 opinion denying Petitioner's state habeas corpus petition.  *Ylst*, 501 U.S. at 804.  The Court of Appeal stated: "[Petitioner] acknowledged on the form in 1999, '[m]y attorney has explained to me that other possible consequences of this plea may be . . . priorable (increased punishment for future offenses).' [Petitioner] has failed to state a prima facie case upon which relief can be granted." (Lodgment No. 10.)  The Superior Court similarly rejected Petitioner's ineffective assistance claim, finding "any claim petitioner was not told about consequences of this plea regarding future use of this conviction is without merit."  (Lodgment No. 8 at 4.)  The Superior Court noted that "[t]here is no authority holding that a prior serious felony conviction enhancement pursuant to Section 667, subdivision (a) cannot be imposed because the defendant had not been advised, prior to pleading in an earlier case, that his conviction could be used to enhance a future sentence should he re-offend.  In such cases, the appellate courts have held the 'possible future use of a current conviction is not a direct consequence of the conviction.'"  (*Id.* at 5 (citations omitted.))

The Court finds Petitioner's claim in Ground Two is not cognizable on federal habeas review.  Essentially, Petitioner is attempting to challenge the validity of his 1999 guilty plea on the basis that his then-counsel was ineffective.  However, the United States Supreme Court has held that prisoners may not collaterally attack convictions that are used to enhance a later sentences under §2254, except in three limited circumstances.  *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 402-04 (2001).  The Court explained:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.  [] If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under §2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id.* at 403-04 (internal citations omitted).

The Supreme Court recognized three exceptions to the general rule: (1) where there was a failure to appoint counsel in violation fo the Sixth Amendment; (2) if the state court

1   refused, without justification, to rule on a constitutional claim that had been properly

2   presented to it; or (3) if the prisoner obtained compelling evidence of actual innocence that

3   could not have been uncovered in a timely manner. *Id.* at 404-05. Here, none of the

4   exceptions apply. First, Petitioner does not argue he lacked counsel. Rather, he only argues

5   his lawyer rendered ineffective assistance with respect to the 1999 plea. Petitioner also does

6   not claim the state court refused to rule on a properly presented claim challenging the

7   validity of his plea, or that any evidence of actual innocence exists. Accordingly,

8   Petitioner's claim that his prior plea was invalid because his then-counsel performed

9   deficiently is foreclosed by *Lackawanna*. Therefore, Petitioner has not presented a

10  cognizable claim.

11      However, even assuming Petitioner has presented a cognizable claim, the state courts

12  reasonably rejected Petitioner's ineffective assistance of counsel claim. To establish an

13  ineffective assistance of counsel claim, Petitioner must show (1) that his counsel performed

14  deficiently, and (2) that he was prejudiced by his counsel's errors. *Strickland v. Washington*,

15  466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance should be highly

16  deferential. *Id.* at 689. There is a "strong presumption that counsel's conduct falls within

17  a wide range of reasonable professional assistance." *Id.* at 686-87. The court may reject a

18  petitioner's claim upon finding either that counsel's performance was reasonable or that the

19  claimed error was not prejudicial. *Id.* at 697.

20      As noted above, it appears from the record that Petitioner was in fact advised by his

21  attorney that his 1999 plea could be used to enhance a future conviction. (*See* Lodgment 11

22  ("My attorney has explained to me that other possible consequences of this plea may be: .

23  . . Priorable (increased punishment for future offenses), Prison prior").) Petitioner has not

24  presented any evidence that he was not advised as indicated in the plea agreement.

25  Moreover, a criminal defendant has no right to be advised of the collateral consequences of

26  a plea. *United States v. Brownlie*, 915 F.2d 527, 528 (9th Cir. 1990); *Torrey v. Estelle*, 842

27  F.2d 234, 235 (9th Cir. 1988). The possibility that a defendant will be convicted of another

28  offense in the future and will receive an enhanced sentence based on the prior conviction is

1   a collateral consequence. *Brownlie*, 915 F.2d at 528 (noting the distinction between a direct

2   and a collateral consequence turns on whether the result represents a "definite, immediate

3   and largely automatic effect on the range of the defendant's punishment."); *see also United*

4   *States v. Garrett*, 680 F.2d 64, 65-66 (9th Cir. 1982).   Therefore, even if Petitioner's counsel

5   failed to advise Petitioner that his 1999 plea could be used to enhance a future sentence, his

6   counsel's performance did not fall below an objective standard of reasonableness.  Thus, the

7   Court finds the state court's denial of Petitioner's ineffective assistance of counsel claim

8   based on his 1999 defense counsel's conduct was not contrary to nor an unreasonable

9   application of clearly established Supreme Court law. *See Williams*, 529 U.S. at 412-13.

10        Accordingly, the Court RECOMMENDS that Petitioner's claim in Ground Two be

11   DENIED.

12       **E.**    **Claim Three: Ineffective Assistance of Trial Counsel in 2010**

13        In Ground Three, Petitioner contends that his trial attorney in 2010 rendered

14   ineffective assistance by: (1) failing to file a motion to suppress evidence; (2) failing to

15   introduce evidence of the victim's prior bad acts; (3) failing to require a foundation for

16   admission of evidence; (4) failing to object to prosecutorial misconduct regarding a violation

17   of a *motion in limine* ruling; and (5) failing to impeach trial testimony with conflicting

18   preliminary hearing testimony. (ECF No. 5 at  8.)  Respondent counters that the state courts

19   reasonably and properly rejected Petitioner's ineffective assistance claims because they are

20   factually unsupported and because Petitioner failed to demonstrate how the alleged failures

21   of counsel caused him any prejudice.  (ECF No. 12 at 19-20.)   For the reasons set forth

22   below, the Court agrees with Respondent.

23        Petitioner presented this claim to the California Supreme Court, and it was denied

24   without comment.  (Lodgment Nos. 11 and 12.)  The Court will therefore look through the

25   silent denial to the last reasoned decision, which is the Court of Appeal's December 21, 2011

26   opinion denying Petitioner's direct appeal. *Ylst*, 501 U.S. at 804.  The Court of Appeal

27   rejected Petitioner's first, fourth and fifth arguments, finding they were conclusory and

28   unsupported. (Lodgment No. 6 at 6.)  The Court stated:

As an initial matter, we note that with respect to his first, fourth, and fifth arguments, [Petitioner] has made only cursory and unsupported arguments that lack citation to the record.  In addition, although he cites to a number of statements that witnesses made at the preliminary hearing with respect to his fifth argument, [Petitioner] does not identify how those statements are inconsistent with any other testimony presented at trial. [Petitioner] appears to assume that this court will cull the record to find the portions on which he is relying. However, California Rules of Court, rule 8.204(a)(1)(C), requires that parties '[s]upport any reference to a matter in the record by citation to the volume and page number of the record where the matter appears.'  This court is not 'obligate[d] . . . to cull the record for the benefit of the appellant.' (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.) Further, '[i]ssues do not have a life of their own: if they are not raised or supported by argument or citation to authority, [they are] . . . waived. [Citations.]' (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.) We therefore consider these arguments to be forfeited.

(Lodgment No. 6 at 6-7.)

The Court of Appeal went on to reject Petitioner's second and third arguments on the merits as follows:

We also reject on their merits [Petitioner's] two remaining claims that his trial attorney provided ineffective assistance. . . . [Petitioner] argues that his attorney was ineffective for failing to introduce evidence of Ramsay's 2009 arrest for domestic violence against her husband. However, [Petitioner's] attorney did attempt to introduce other evidence suggesting that Ramsay had acted violently in the past when he sought to refer to an anger management class in which she had enrolled, apparently in relation to a custody dispute. The trial court denied this request, explaining that evidence of Ramsay's penchant for violence was essentially irrelevant: "[T]he defense, in chambers, indicated that self-defense was not being raised by the defense in this case.  Maybe you have changed your mind about that.  But if self-defense is not being raised, then I question seeking to present evidence that the alleged victim has a propensity for violence. . . ."  The court proceeded to address the prosecutor's request to exclude any reference to Ramsay's 2009 domestic violence arrest.  At that point, defense counsel indicated that the defense would not be seeking to introduce the arrest because self-defense was not going to be raised as a defense.
. . .

We similarly reject [Petitioner's] contention that his attorney's performance was deficient in that counsel failed to object, on the ground of lack of foundation, to the introduction of various voicemail messages purportedly left by [Petitioner] on Ramsay's answering machine.  "'Whether to object to inadmissible evidence is a tactical decision; because trial counsel's tactical decisions are accorded substantial deference [citations], failure to object seldom establishes counsel's incompetence.' [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 215.)  "'In order to prevail on [an ineffective assistance of counsel] claim on direct appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission.' [Citation.]" (*Ibid.*)

Here, defense counsel *did* attempt to have evidence of the voicemail messages excluded, arguing that it was unclear when the messages had been left. However, Shue testified that he heard the messages after the incident and

13

1  recognized [Petitioner's] voice.  In addition, Ramsay testified that it was
2  [Petitioner] who had left the messages, and she identified which of the
   messages were left on her voicemail on the day of the incident, and which were
3  left after [Petitioner] was arrested.  The testimony by these witnesses laid an
   adequate foundation for the court to permit the introduction of evidence of the
4  voicemail messages.  Because defense counsel may have reasonably surmised
   that there was a sufficient foundation for the introduction of evidence of the
   voicemail messages, we cannot conclude that there was no tactical basis for
5  defense counsel failing to object again to the introduction of this evidence.

6  (Lodgment No. 6 at 7-9.)

7      As previously discussed, the clearly established United States Supreme Court

8  precedent governing ineffective assistance of counsel claims is *Strickland v. Washington*,

9  466 U.S. 668 (1984).  *See Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that

10 *Strickland* "has long been clearly established federal law determined by the Supreme Court

11 of the United States").  Under *Strickland*, Petitioner must show both incompetence and

12 counsel and prejudice in order to justify issuance of the writ.  *Strickland*, 466 U.S. at 688.

13 However, the Court need not address both prongs if the petitioner fails to make a sufficient

14 showing of either one.  *Id.* at 697.

15     To establish incompetency, Petitioner must show his counsel's performance fell below

16 an objective standard of reasonableness.  *Id.* at 688.  "This requires showing that counsel

17 made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

18 defendant by the Sixth Amendment."  *Id.* at 687.  Review of counsel's performance is

19 "highly deferential" and there is a "strong presumption" that counsel rendered adequate

20 assistance and exercised reasonable professional judgment.  *United States v. Ferreira-*

21 *Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987); *see Strickland*, 466 U.S. at 690; *Butcher v.*

22 *Marquez*, 758 F.2d 373, 376 (9th Cir. 1985).  To establish prejudice, Petitioner must show

23 "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

24 the proceeding would have been different.  A reasonable probability is a probability

25 sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694. *See also*

26 *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

27     "Federal habeas courts must guard against the danger of equating unreasonableness

28 under *Strickland* with unreasonableness under § 2254(d)."  *Harrington v. Richter*, 131 S.Ct.

770, 788 (2011) (reversing a Ninth Circuit en banc grant of habeas relief on an ineffective assistance claim for lack of sufficient deference to the state court result). "[T]he question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id. See also Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) ("We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'") (citation omitted). The petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Petitioner's first, fourth and fifth claims of ineffective assistance of counsel were rejected by the Court of Appeal for lack of support. Likewise, here, Petitioner's arguments are conclusory and unsupported. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S.Ct. 10, 17 (2013). Moreover, Petitioner has not explained how his counsel's performance caused him any prejudice. Unsupported conclusory allegations that an attorney's performance was substandard are not sufficient to show prejudice. *United States v. Popoola*, 881 F.2d 811, 813 (9th Cir. 1989) *overruled on other grounds by Lozada v. Deeds*, 964 F.2d 956 (9th Cir. 1992). In light of the fact Petitioner failed to support his arguments, the Court finds the Court of Appeal's rejection of Petitioner's first, fourth and fifth claims of ineffective assistance was not unreasonable.

In Petitioner's second claim of ineffective assistance, he argues his lawyer failed to introduce evidence about the victim, Ms. Ramsay's prior acts. However, it appears from the record that his counsel did seek permission to introduce evidence that Ms. Ramsay was enrolled in an anger management class. (Lodgment No. 3 at 22-23.) The trial court denied the request, finding evidence of the victim's propensity for violence was irrelevant unless Petitioner was raising self-defense. (*Id.* at 25-26.) The trial court then asked defense counsel if he sought to introduce Ms. Ramsay's 2009 arrest for domestic violence against her husband. (*Id.* at 27.) Petitioner's counsel stated that he would not because he did not

anticipate raising the issue of self-defense.  To prove ineffective assistance, the petitioner must overcome the presumption that his attorney exercised sound trial strategy.  *Strickland*, 466 U.S. at 689; *Morris v. California*, 966 F.2d 448, 456 (9th Cir. 1991), *cert. denied*, 506 U.S. 831 (1992).  Given the trial court's ruling that evidence of Ms. Ramsay's propensity for violence would not be admissible unless Petitioner asserted self defense, counsel's tactical decision not to introduce her 2009 domestic violence arrest falls within the wide range of reasonable professional representation.  In addition, Petitioner has failed to explained how his counsel's performance caused him any prejudice.  Therefore, the Court finds the Court of Appeal's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law.

Finally, in Petitioner's third claim of ineffective assistance of counsel, Petitioner argues his trial attorney failed to require a foundation for the admission of several voicemail messages that were left on Ms. Ramsay's answering machine.  In essence, Petitioner is arguing that his counsel failed to object to this evidence on the basis of lack of foundation.  An attorney's failure to object to inadmissible evidence is not necessarily ineffective.  *Morris*, 966 F.2d at 456.  An attorney's tactical decision not to object to evidence may be reasonable.  *Id.*; *United States v. Bosch*, 914 F.2d 1239, 1246-47 (9th Cir. 1990).

Here, Petitioner's counsel initially attempted to suppress the voicemail messages, by filing an *in limine* motion.  (Lodgment No. 1 at 21-22.)   Petitioner's counsel argued the messages were irrelevant, and that it was unclear when the messages had been left.  The trial court denied the motion.  (Lodgment No. 3 at 35.)  The trial court found the messages were relevant and indicated the defense's concerns regarding the  timing of the messages  could be addressed by the prosecution when the evidence was introduced.  (*Id.* at 32.)  In regard to the foundation the prosecution would need to establish to admit the  messages, the trial court stated:

The Court:    Well on the issue of timing, I'm assuming that if the People introduce it, they are going to be introducing testimony about when the messages were received.  Or am I wrong about that?

Mr. Lawson:    No, your Honor.  I would play them for Ms. Ramsay and Mr. Shue, and they would identify them and authenticate the defendant's voice and

1    the general time period that they were left.

2  (Lodgment No. 3 at 32-33.)

3       Subsequently, the prosecutor laid the foundation to admit the voicemail messages

4  based on Mr. Shue's testimony that he heard the messages after the incident and recognized

5  Petitioner's voice, and Ms. Ramsay's testimony identifying when the messages were left on

6  her answering machine. (*See* Lodgment No. at 3 at 135-136;  205-208.)  Thus, Petitioner's

7  counsel did not lack a rational tactical purpose in deciding not to object to the voicemail

8  evidence for lack of foundation.  Further, Petitioner has not shown any prejudice.  Therefore,

9  the Court finds the Court of Appeal's rejection of this claim was not contrary to or an

10  unreasonable application of clearly established federal law.

11       Accordingly, the Court RECOMMENDS that Petitioner's claim in Ground Three be

12  DENIED.

13       **F.   Claim Four: Prosecutorial Misconduct**

14       In Ground Four, Petitioner argues the prosecutor committed misconduct in the

15  following ways: (1) by misleading the jury about the reason one of the victims attended

16  anger management class; (2) by referring to "other acts" evidence that the trial court had

17  excluded during an in limine hearing; and (3) by failing to disclose *Brady* material.  (ECF

18  No. 5 at 9.)  Respondent argues this claim is procedurally defaulted for two reasons.  First,

19  Respondent argues Petitioner failed to properly exhaust the claim in state court.  (ECF No.

20  12 at 4.)  Second, Respondent asserts the claim is defaulted for explicit failure to comply

21  with California law.  (*Id.* at 5.)  Alternatively, Respondent argues the claim lacks merit.  (*Id.*

22  at 9.)

23       **a.   Procedural Default**

24       "Before a federal court may grant habeas relief to a state prisoner, the prisoner . . .

25  must give the state courts an opportunity to act on his claims before he presents those claims

26  to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 845

27  (1999) (the required "full opportunity to resolve any constitutional issues" means that the

28  prisoner has invoked "one complete round of the State's established appellate review

process"); 28 U.S.C. § 2254(b)(1).  When a state prisoner fails to properly exhaust his claims in state court, and there is no available state remedy, the claims are procedurally defaulted in federal court.  *Gray v. Netherland*, 518 U.S. 152, 161 (1996); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (noting there is a default for purposes of federal habeas "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.").  "A petitoner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

Here, Respondent contends Petitioner did not fairly present this claim to the California Supreme Court because it was not raised in the body of his Petition for Review, and therefore, the claim should be deemed procedurally barred.  However, Petitioner did attach, as an exhibit to his petition, the brief he filed on direct appeal.  In that brief, Petitioner raised his prosecutorial misconduct claim.  (*See* Lodgment No. 11.)  The Ninth Circuit has recognized that if a claim is raised in an attachment to a petition for review, the claim is fairly and fully presented for purposes of meeting the exhaustion requirement.  *Insyziengmay v. Morgan*, 403 F.3d 657, 667-69 (9th Cir. 2005) (finding the petitioner adequately presented three federal claims to the state supreme court by including them in an appendix to his petition, even though the claims were not contained in the body of his brief).  *See also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (holding that a petitioner must  present his claim in "a petition or brief (*or a similar document*)" in order to fairly present  it to the state court) (emphasis added); *Miller v. Quinn*, 307 Fed.Appx. 96, 98 (9th Cir. 2009)  (finding an appendix to a petition for review that contained a federal claim was "a similar document" under *Baldwin*, and therefore, the petitioner had fairly presented his claim to the state supreme court).  Therefore, the Court finds Petitioner satisfied the exhaustion requirement, and his claim is not procedurally defaulted on this basis.

In addition to the obstacle of failure to exhaust state court remedies,  a petitioner can

be found to have procedurally defaulted federal claims for failure to comply with state procedural rules.  "As a rule, a state prisoner's habeas claims may not be entertained by a federal court 'when (1) "a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement," and (2) "the state judgment rests on independent and adequate state procedural grounds."'" *Maples v. Thomas*, 132 S.Ct. 912, 922 (2012), *quoting Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011).  In order to be "independent," "the state law basis for the decision must not be interwoven with federal law." *La Cross v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001).  "To be 'adequate,' the state procedural rule must be 'strictly or regularly followed' and 'consistently applied.'" *Id.* However, a procedural default does not bar  a federal court from considering a federal claim on habeas review "unless the last state court rendering a judgment in the case 'clearly and expressly' states that is judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).  *See also Siripongs v. Calderon*, 35 F.3d 1308, 1317 (9th Cir. 1994).

When the procedural default bar is invoked as an affirmative defense in federal habeas proceedings, the burden shifts to the petitioner to place that defense in issue "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure." *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003).  If the petitioner does not carry that burden, and the state rule is adequate and independent, the claim is procedurally defaulted and federal habeas review is foreclosed, unless the petitioner demonstrates cause for the procedural default and actual prejudice. *Maples*, 132 S.Ct. at 922 ("The bar to federal review may be lifted, if 'the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law'") *quoting Coleman*, 501 U.S. at 750.  "Cause" for a default under the test must be an "external" factor that cannot fairly be attributed to the petitioner.  *Id.*  "Prejudice" under the test requires that a petitioner show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and *substantial* disadvantage, infecting his entire trial with error of constitutional magnitude." *United States v. Frady*, 456 U.S. 152, 170 (1982).  The petitioner can also avoid a procedural default if he demonstrates that failure to consider the

1   claim would result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.  The

2   "miscarriage of justice" exception is limited to petitioners who can show that "a

3   constitutional violation has probably resulted in the conviction of one who is actually

4   innocent."  *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995).

5       Here, the California Court of Appeal stated the denial of much of Petitioner's

6   prosecutorial misconduct claim rested on a state procedural bar.  Specifically, with regard

7   to the three sub-claims[2] Petitioner raises in Ground Four of the instant Petition, the Court of

8   Appeal stated Petitioner failed to "provide sufficient support or citations" for his arguments.

9   (Lodgment No. 6 at 10.)  The Court, therefore, held Petitioner "forfeited these contentions."

10  (*Id.* at 10.)  The Court did not address the forfeited sub-claims on the merits.  Therefore, the

11  burden has shifted to Petitioner to challenge the independence or adequacy of the procedural

12  bar.  *Bennett*, 332 F.3d at 586.

13      Petitioner has not filed a Traverse, and has not otherwise carried his burden to place

14  at issue the independence and adequacy of the cited state law grounds that the Court of

15  Appeal relied on to foreclose review of his prosecutorial misconduct claim.  *See Bennett*, 322

16  F.3d at 580, 586.  The Court notes, however, that California's inadequate briefing rule is a

17  well established and consistently applied rule.  *See People v. Hovarter*, 44 Cal.4th 983, 1029

18  (2008); *People v. Gray*, 37 Cal.4th 168, 198 (2005); *People v. Stanley*, 10 Cal.4th 764, 793

19  (1995); *Jones v. Superior Court*, 26 Cal.App.4th 92, 99 (1994); Cal. Ct. R. 8.204(a)(1)(C).

20  Further, the rule does not require the state court to determine if federal error has occurred.

21  The state court simply determines whether the claim was adequately briefed.  Thus, the

22  inadequate briefing rule is independent and adequate state law procedural rule that bars

23  federal relief.  Also, Petitioner has not demonstrated cause for the default and prejudice, or

24  that a fundamental miscarriage of justice would accompany this Court's decision not to

25

26      [2]Petitioner's initial prosecutorial misconduct claim consisted of 10 sub-claims, each alleging a
    separate instance of misconduct.  (Lodgment No. 4 at 25-27.)  The Court of Appeal rejected 6 of the
27  sub-claims on procedural grounds, including the 3 sub-claims Petitioner raises here.  (Lodgment No. 6 at
    9-10.)  The Court addressed the remaining 4 sub-claims on the merits.  (*Id.* at 10-16.)  Petitioner has not
28  raised those 4 sub-claims in his federal petition.  (ECF No. 5.)  Accordingly, all of the claims of
    prosecutorial misconduct that are presented in the instant petition were rejected by the state court on
    procedural grounds.

consider the procedurally defaulted claim. *See Coleman*, 501 U.S. at 750. As a result, Petitioner's claim in Ground Four regarding prosecutorial misconduct is procedurally defaulted. Therefore, it is RECOMMENDED that Ground Four be DENIED as procedurally defaulted, foreclosing federal habeas relief on that theory.

Nevertheless, "in the habeas context, a procedural default . . . is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997). If the Court elects to reach the merits of Ground Four despite Petitioner's procedural default of that claim, it is RECOMMENDED, alternatively, that it be DENIED as not warranting federal habeas relief.

### b.   Merits

Because the California Supreme Court denied Petitioner's Prosecutorial Misconduct claim without comment, (Lodgment Nos. 11 and 12) the Court must look through the silent denial to the Court of Appeal's December 21, 2011 opinion denying Petitioner's direct appeal. *Ylst*, 501 U.S. at 804. The Court of Appeal rejected the three sub-claims Petitioner raises here as conclusory and unsupported. (Lodgment No. 6 at 9-10.) The Court stated:

> Many of Patterson's claims of prosecutorial misconduct consist of a single sentence, and some of his claims are essentially the same arguments that he makes with respect to ineffective assistance of counsel. Further, Patterson fails to provide sufficient support or citations for the following arguments as to how the prosecutor committed misconduct: (1) the prosecutor violated the court's in limine rulings regarding the exclusion of past acts of violence evidence; (2) the prosecutor misled the jury as to the reason for Ramsay's participation in anger management classes and/or whether drugs or alcohol were involved; . . . (4) the prosecutor failed to disclose *Brady* material concerning the search of Patterson's bedroom. . . . Patterson has forfeited these contentions, for the same reasons that he forfeited certain of his claims of ineffective assistance of counsel, as discussed, *ante*.[FN 3]
>
> [FN 3] Also, as to many of these contentions, there is simply no basis for the suggestion that the prosecutor acted improperly.

(Lodgment No. 6 at 9-10.)

The clearly established federal law regarding prosecutorial misconduct provides that "[t]o constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987) , *quoting United States v. Bagley*, 473 U.S. 667, 676 (1985). The alleged misconduct is reviewed in the context of the entire trial. *Donnelly v. DeChristoforo*,

416 U.S. 637, 643 (1974). "A constitutional violation arising from prosecutorial misconduct does not warrant habeas relief if the error is harmless." *Towery v. Schriro*, 641 F.3d 300, 307 (9th Cir. 2010), citing *Sandoval v. Calderon*, 241 F.3d 765, 778 (9th Cir. 2000).

Here, Petitioner states in a conclusory fashion that the prosecutor committed misconduct. However, as pointed out by the Court of Appeal, Petitioner has presented no evidence that would indicate the prosecutor acted improperly. The Court has reviewed the record and does not find any factual support for Petitioner's claims, much less any support that Petitioner's federal due process rights were violated. Conclusory allegations such as Petitioner's claims here are insufficient to support granting habeas relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Petitioner has not sufficiently demonstrated that any misconduct occurred, or that the alleged misconduct infected his entire trial with error of constitutional dimensions. Thus, the Court finds the Court of Appeal's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law.

Accordingly, the Court RECOMMENDS that Petitioner's claim in Ground Four be DENIED.

### G.    Claim Five: Judicial Errors

In Ground Five, Petitioner claims the trial court committed error in the following ways: (1) by ruling that if Petitioner testified, the prosecution would be permitted to introduce evidence of Petitioner's prior bad acts for impeachment; and (2) by ruling the tape recorded voicemail messages were admissible.[3]  (ECF No. 5 at 9.)  Respondent argues this claim is procedurally defaulted because Petitioner failed to properly exhaust it in state court. (ECF No. 12 at 4.)  Respondent also asserts the claim is defaulted because Petitioner did not preserve his arguments. (*Id.* at 6.)  Respondent argues in the alternative that the claim lacks merit. (*Id.* at 9.)

---

[3]To the extent Petitioner argues the trial court erred in admitting the voicemail messages because the prosecution did not lay a proper foundation, this claim fails for the reason set forth above in the Court's discussion of Petitioner's ineffective assistance of trial counsel claim. As the Court already discussed, the prosecutor laid the foundation to admit the voicemail messages based on Mr. Shue's testimony that he heard the messages after the incident and recognized Petitioner's voice, and Ms. Ramsay's testimony identifying when the messages were left on her answering machine. (*See* Lodgment No. at 3 at 135-136;  205-208.)

### a.      Procedural Default

For the same reason discussed above with respect to Ground Four, the Court finds Ground Five is not procedurally defaulted for failure to exhaust.  The brief Petitioner attached to his Petition for Review included the claims he asserts in Ground Five.  (*See* Lodgment No. 11.)  Therefore, the claim was fairly presented for purposes of meeting the exhaustion requirement.  *See Insyziengmay*, 403 F.3d at 667-69.

Respondent alternatively argues the Court of Appeal rejected Petitioner's first sub-claim regarding the trial court's rulings pertaining to the use of Petitioner's prior convictions on procedural grounds.[4]  Respondent states that because Petitioner never testified, he did not preserve the arguments.  (ECF No. 12 at 6.)

With regard to Petitioner's first sub-claim, the Court of Appeal stated: "It is clear that in order '[t]o raise and preserve for review the claim for improper impeachment with a prior conviction, a defendant must testify.' . . . In this case [Petitioner] did not testify.  As a result, he has not preserved this issue for appeal." (Lodgment No. 4 at 16-17.)  The Court further found that in order to preserve a claim concerning the potential use of a prior conviction to prove intent, the Petitioner must testify.  (*Id.* at 18-19.)  Therefore, the burden has shifted to Petitioner to challenge the independence or adequacy of the procedural bar.  *Bennett*, 332 F.3d at 586.

Again, because Petitioner did not file a Traverse, he has not carried his burden to place at issue the independence and adequacy of the cited state law grounds relied on to foreclose review of his judicial error claim.  *Bennett*, 322 F.3d at 580, 586.  The Court further finds that California's rule requiring a defendant to testify in order to preserve a claim of improper impeachment on appeal is an independent and adequate state law procedural rule that bars federal relief .  *See People v. Collins*, 42 Cal.3d 378, 385 (1986) (adopting rule from *Luce v. United States*, 469 U.S. 38 (1984) that a defendant must testify in order to preserve an

---

[4] The Court of Appeal addressed Petitioner's second sub-claim in Ground Five regarding the admission of tape recorded voicemail messages on the merits.  (Lodgment No. 4 at 33.)  Therefore, the Court finds the second sub-claim is not procedurally defaulted.  *See Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000).

1  objection to a trial court's ruling that a prior conviction could be admitted); *People v. Sims*,

2  5 Cal.4th 405, 455 (1993).  Petitioner has also failed to show cause for the default and

3  prejudice, or that a fundamental miscarriage of justice would accompany this Court's

4  decision not to consider the procedurally defaulted claim.  *See Coleman*, 501 U.S. at 750.

5  As a result, Petitioner's first sub-claim in Ground Five regarding the trial court's ruling

6  concerning Petitioner's prior convictions is procedurally defaulted.  Therefore, it is

7  RECOMMENDED that this aspect Ground Five be DENIED as procedurally defaulted,

8  foreclosing federal habeas relief on that theory.  Alternatively, if the Court elects to reach the

9  merits, it is RECOMMENDED, that the claim be DENIED as not warranting federal habeas

10  relief.  *Trest v. Cain*, 522 U.S. 87, 89 (1997).

11              **b.      Merits**

12          Petitioner presented his claim in Ground Five to the California Supreme Court, and

13  it was denied without comment.  (Lodgment Nos. 11 and 12.)  Therefore, the Court looks

14  through the denial to the Court of Appeal's December 21, 2011 opinion.  *Ylst*, 501 U.S. at

15  804.  The Court of Appeal denied Petitioner's first sub-claim as follows:

16              Patterson did not testify, and the prosecution did not introduce evidence
            of the facts of Patterson's prior convictions at trial.

17

18              Patterson appears to contend that the trial court's ruling effectively
            prevented him from testifying in his own defense, because he was worried
19          about what evidence regarding his prior convictions the trial court might admit
            if he were to testify.  The People argue that the rule that requires a defendant
20          to testify in order to preserve a claim concerning the prosecutor's use of
            impeachment evidence should also apply to Patterson's contention that the
21          court's ruling that it might permit the prosecution to introduce evidence of his
            prior convictions to prove intent, if the defense opened the door to such
22          evidence, prevented him from testifying.  We agree.

23              The trial court never made a final ruling as to whether evidence of the
            facts underlying Patterson's prior convictions could come in, and, since
24          Patterson never testified, the evidence of his prior crimes ultimately was not
            admitted.  Patterson may not now contend that he was effectively prevented
25          from testifying as a result of the court's refusal to make a definitive ruling
            prohibiting the prosecution from using the facts of his prior convictions,
26          regardless of what evidence the defense might present at trial.  As was the case
            with respect to impeachment with the fact of his prior convictions, Patterson
27          had no right to give testimony that was immune from challenge by the facts
            underlying his prior convictions.  (*Collins, supra*, 42 Cal.3d at p. 387.)  If the
28          court's conditional ruling on this issue were reviewable on appeal despite the
            defendant's failure to testify at trial, "almost any error would result in the
            windfall of automatic reversal; the appellate court could not logically term

                                                    24                                    13cv1536-MMA (DHB)

1  'harmless' an error that presumptively kept the defendant from testifying.
2  Requiring that a defendant testify in order to preserve [Evidence Code section
   352] claims will enable the reviewing court to determine the impact any
3  erroneous impeachment may have had in light of the records as a whole; it will
   also tend to discourage making such motions solely to 'plant' reversible error
4  in the event of conviction." (*Luce v. United States* (1984) 469 U.S. 38, 42.)

5  (Lodgment No. 6 at 18-19.)

6      The Supreme Court has held that a defendant must testify in order to raise and

7  preserve for review the claim of improper impeachment with a prior conviction. *Luce v.*

8  *United States*, 469 U.S. 38, 43 (1984). *See also Galindo v. Ylst*, 971 F.2d 1427, 1429 (9th

9  Cir. 1991) (stating that although "*Luce* was laid down as a federal rule of procedure, [] it

10 surely follows that its requirements do not violate the United States Constitution"). Here,

11 Petitioner chose not to testify. Therefore, the Court of Appeals' conclusion that Petitioner

12 had waived this issue was not contrary to or an unreasonable application of federal law.

13     Moreover, the Court of Appeal reasonably rejected Petitioner's claim that the trial

14 court's ruling prevented him from putting on a defense. A defendant has the right to take the

15 stand and testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). However,

16 if a defendant chooses to testify, he "is of course subject to cross-examination and subject

17 to impeachment by the use of a prior conviction." *Ohler v. United States*, 529 U.S. 753,

18 (2000). The Supreme Court has recognized that although a trial court's tentative ruling

19 regarding the use of impeachment evidence may chill a Defendant's willingness to testify,

20 it does not infringe on the defendant's constitutional rights. In *McGautha v. California*, the

21 Supreme Court explained:

22     It has long been held that a defendant who takes the stand in his own behalf
       cannot then claim the privilege against cross-examination on matters reasonably
23     related to the subject matter of his direct examination. . . . It is not thought
       overly harsh in such situations to require that the determination whether to
24     waive the privilege take into account the matters which may be brought out on
       cross-examination. It is also generally recognized that a defendant who takes
25     the stand in his own behalf may be impeached by proof of prior convictions or
       the like. . . . Again, it is not thought inconsistent with the enlightened
26     administration of criminal justice to require the defendant to weigh such pros
       and cons in deciding whether to testify.
27
28 *McGautha v. California*, 402 U.S. 183, 215 (1971). *See also Ohler*, 529 U.S. at 759; *Luce*,

25                                    13cv1536-MMA (DHB)

469 U.S. at 463 ("Because an accused's decision whether to testify 'seldom turns on the resolution of one factor,' a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify.") (internal citation omitted).  Therefore, the Court finds the Court of Appeal's rejection of Petitioner's first sub-claim was not unreasonable.

Next, with regard to Petitioner's second sub-claim regarding the admissibility of the voicemail messages, the Court of Appeal stated:

> Patterson has not demonstrated that the trial court abused its discretion in admitting the challenged voicemail messages.  Patterson had left some of the voicemail messages prior to the incident.  These voicemails, in which Patterson said that he wanted to have a discussion about Ramsay's "mother-fucking attitude," and warned her to "make sure nobody's there" because he was going to "beat the fucking shit out of that little punk [i.e., Shue]" and also warned that the "shit's hitting the fan" and to make sure "Johnny baby ain't around," were probative of Patterson's state of mind in the hours leading up to the violent incident, and tended to show that Patterson was behaving in a threatening manner, as the witnesses had described.  The messages also clearly went to Patterson's intent to harm Shue if Shue were to come to the apartment with Ramsay.  For these reasons, we cannot conclude that the trial court abused its discretion in admitting the voicemail messages that Patterson left for Shue prior to the incident.

> The remaining voicemail messages were left after the incident.  In these messages, Patterson can be heard saying things like, "I don't know why you're doing this to me but; you're sending me away for the rest of my life you know that.  I hope you're happy," and "Why you doing this?  I don't understand.  Why you doing this to me.  Why are [you] sending me away for the rest of my life.  [¶] You hate me that much?"  Even if the trial court should have excluded these messages as irrelevant, it is difficult to discern how the admission of these messages was prejudicial to Patterson, and Patterson makes no showing that the messages were, in fact, prejudicial.  These messages are not inculpatory, and, if anything, could have been of benefit to the defense by portraying Patterson as a sympathetic figure.  Thus, even if we were to conclude that the trial court should not have admitted these voicemail messages, we would conclude that the error did not contribute to the verdict.

(Lodgment No. 6 at 21-22.)

The admission of evidence is an issue of state law.  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, to the extent Petitioner is arguing the voicemail messages were improperly admitted under the California Evidence Code, his claim is not cognizable on federal habeas review.  *See Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) ("We have no authority to review alleged violations of a state's evidentiary rules in a federal habeas proceeding.").  To obtain federal habeas relief based upon a state court's admission of evidence, Petitioner must show the admission of the evidence was so

prejudicial that it rendered the trial fundamentally unfair in violation of due process. *Estelle v. McGuire*, 502 U.S. 62, 70 (1991); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991); *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990). "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). The Supreme Court has not yet made a clear ruling that "admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). The Ninth Circuit has noted that the admission of evidence violates due process only if "there are *no* permissible inferences the jury may draw from the evidence." *Jammal*, 926 F.2d at 920.

Here, due to the absence of controlling Supreme Court precedent, it cannot be said that the Court of Appeal's rejection of Petitioner's second sub-claim, even if incorrect under California law, was contrary to or an unreasonable application of clearly established federal law. *Estelle*, 502 U.S. at 67. Moreover, there were permissible inferences the jury could draw from the voicemail evidence. As the Court of Appeal noted, the voicemails were relevant to show Petitioner's state of mind prior to the offenses, and to corroborated the victims' testimony that Petitioner was behaving in a threatening manner. (Lodgment No. 6 at 21.) The voicemail evidence was also relevant to show Petitioner's intent to harm Mr. Shue if he were to go to the apartment with Ms. Ramsay. Further, as the Court of Appeal stated, the voicemail messages that were left after the incident tended to be exculpatory in nature. (*Id.* at 21.) Thus, the Court finds there was no due process violation.

Accordingly, the Court RECOMMENDS that Petitioner's claim in Ground Five be DENIED.

## III.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Michael M. Anello under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d) of the United States District Court for the Southern District of California. For all the foregoing reasons,

13cv1536-MMA (DHB)

**IT IS HEREBY RECOMMENDED** that the habeas Petition be **DENIED** in its entirety on the ground the Petitioner's custody violates no federal right.

      **IT IS FURTHER RECOMMENDED** the Court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that judgment be entered denying the Petition.

      **IT IS HEREBY ORDERED** no later than **September 1, 2014**  any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

      **IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than ten (10) days from service of Petitioner's filed Objections.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

      **IT IS SO ORDERED.**

DATED:  August 1, 2014

DAVID H. BARTICK
United States Magistrate Judge